## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKKI M. ABSKHARON, PETER A. ABSKHARON and BARRY WINOGRAD, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br><br>        v.<br><br><br>AIR CANADA,<br><br>        Defendant. | Civil Action No.:  7:20-cv-11037 (PMH)<br><br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Barry Winograd ("Plaintiff"),[1] by his attorneys, brings this class action on his own behalf and on behalf of all others similarly situated ("Class Members") and makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a class action against Defendant Air Canada arising out of its failure to provide full refunds as a result of its unilateral change in refund practices to consumers whose flights were cancelled by Air Canada following the advent of the COVID-19 pandemic ("Pandemic") in or about March of 2020.  Pursuant to this unilaterally and retroactively imposed new refund practice, Air Canada systematically refused to provide ticketed passengers refunds for flights Air Canada cancelled.  By refusing to provide refunds, Air Canada repudiated and breached the terms of the Contracts of Carriage (defined below) in place at the time of ticket issuance

---

[1] A Stipulation of Dismissal of the Claims of Plaintiffs Nikki M. Abskharon and Peter A. Abskharon was filed in this action on January 26, 2021 (ECF No. 31).

between it and its passengers requiring full refunds under these circumstances and preventing such changes.

2.      In its pre-March of 2020 FAQ, Air Canada informed prospective passengers that "The best time to decide about getting a refund is *when buying your ticket*. Familiarize yourself with our refund policies, and take the time to select a ticket that suits all of your needs at the outset. You should always be aware, *at the time of purchase*, if your ticket is refundable and under what conditions." Exhibit 1, *Frequently Asked Questions*, p. 2 of 13 (emphasis added). Yet, Air Canada then retroactively and unilaterally changed the conditions for refunds by applying its newly minted refund practice. Such a change is ***not*** permitted by its Contracts of Carriage with Plaintiff and Class Members.

3.      Initially, Air Canada acted consistent with its obligations under the Contracts of Carriage. For example, when Air Canada cancelled flights to Beijing and Shanghai on January 29, 2020 as a result of the COVID-19 pandemic, it announced in a press release that "[a]ffected customers will be notified and offered options, including travel on other carriers where available, ***or a full refund***."[2] (emphasis added).

4.      As Pandemic related cancellations began to increase in the successive weeks, however, Air Canada began a strategy to avoid paying refunds. At first, Air Canada delayed implementation of its new refund denial practice hoping ticketed passengers would voluntarily cancel their tickets for fear of travelling during the Pandemic, thereby relieving Air Canada from its obligation under the terms of the Contracts of Carriage to pay refunds to passengers whose flights are cancelled by Air Canada. When the Pandemic worsened in March of 2020 and Air Canada could no longer avoid its mass cancellations of flights, it changed its refund practice in violation of its Contracts of Carriage and began denying refunds for flights Air Canada cancelled and misrepresenting passengers' contractual rights to refunds by telling them on its website and elsewhere that they were not entitled to a refund and could only get a credit voucher for a future

---

[2] https://aircanada.mediaroom.com/2020-01-29-Air-Canada-Suspends-Flights-to-Beijing-Shanghai

flight.   As a result, Air Canada not only refused to give refunds for flights it cancelled, but also deceptively dissuaded, repudiated, and rendered futile any request for a refund, all in violation of its contractual obligations at the time the tickets were sold to Plaintiff and members of the Class. By this complaint, Plaintiff seeks, and hereby requests from Air Canada, refunds for himself and all members of the Class defined below.

5.       The genesis of the COVID-19 pandemic problem began on December 30, 2019, when the Wuhan Municipal Health Commission in Wuhan, China released a notice to medical institutions that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness.  Shortly thereafter, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified as the novel coronavirus SARS-CoV-2, which caused an illness referred to as COVID-19.  On January 30, 2020, the World Health Organization ("WHO") officially declared COVID-19 as a "public health emergency of international concern."

6.       In an effort to curb the spread of COVID-19, on January 31, 2020, the U.S. federal government started implementing travel restrictions from China.  On March 11, 2020, WHO declared COVID-19 a pandemic.  Subsequently, the federal government extended travel restriction globally, with the Department of State advising on March 31, 2020, that U.S. citizens should temporarily avoid all international travel, with the exception that U.S. residents abroad should arrange for immediate return to the United States where possible.

7.       Travel, like many activities once routine, has become severely limited, and in some cases, eliminated.  For example, on March 18, 2020, Air Canada announced that it would "gradually suspend the majority of its international and U.S. transborder flights by March 31, 2020," and intended "to continue to serve a small number of international and U.S. trans-border destinations from select Canadian cities after April 1, 2020."[3]

---

[3] https://aircanada mediaroom.com/2020-03-18-Air-Canada-Provides-Update-on-Ongoing-COVID-19-Response .

8.      Air Canada also unilaterally changed its refund practices and thereby repudiated and breached the terms of the Contracts of Carriage.  Pursuant to the new practice, Air Canada would not allow refunds for flight cancellations on or after March 19, 2020 "unless permitted by fare rule," and modified its website to inform passengers that refunds were only available for cancellations within Air Canada's control and that "*Cancellations resulting from the COVID-19 crisis are considered outside our control.*"[4]  Instead of providing refunds as required under its Contracts of Carriage, under its new unilaterally imposed refund practice (a change not permitted by its Contracts of Carriage), Air Canada is providing vouchers for the pre-paid flights, even if the purpose for the trip has ended, even if the individuals have no intention of flying to a destination serviced by Air Canada in the future, and even if the individuals insisted upon a refund.  These credit vouchers did not guarantee a future flight to the same destination at the same price, but merely gave a credit in the dollar amount paid for the original flight.  These credit vouchers also act as an interest free loan to Air Canada as it will benefit from the time value of money as they can only be used at some date after the original flight, if at all.  But more to the point, these credit vouchers are not the full refund required by passengers' contracts with Air Canada – something that has actual value for passengers.

9.      By changing its refund practice, Air Canada repudiated and breached the terms of its Contracts of Carriage with many passengers who had already purchased tickets.  The Contracts of Carriage provide that Air Canada is required to provide a refund even on a so-called "non-refundable" ticket if (i) a flight cancellation by Air Canada is "required for safety purposes," regardless of whether it is due to an event within Air Canada's control *or* (ii) if Air Canada cancelled the flight for a reason other than a required safety purpose and fails to offer the passenger alternative travel arrangements to allow them to reach their intended destination.  Here, Air Canada informed passengers, like Plaintiff, that their flight was involuntarily cancelled by Air Canada "due to COVID-19" which is a required safety purpose.  *See, e.g.,* Exhibit 9.  Other passengers whose

---

[4] https://www.aircanada.com/us/en/aco/home/book/travel-news-and-updates/2020/covid-19.html#/cancelled-flight.

flights were cancelled by Air Canada who were not sent a notice like Plaintiff were not given alternate flight(s).  Thus, all were entitled to refunds under their Contracts of Carriage with Air Canada.

10.     Moreover, these Contracts of Carriage cannot be so modified after the date that passengers purchased their tickets because the Contracts of Carriage do not permit such an amendment.  Therefore, Air Canada's attempted unilateral change in refund practices constituted a repudiation of the Contracts of Carriage.  By repudiating the Contracts of Carriage, Air Canada anticipatorily breached its contracts with ticketed passengers and excused any duty to provide Air Canada with a request for refund.  Air Canada's conduct in refusing any request for a refund also rendered any refund request futile.

11.      Air Canada's change to its refund practice and its announcement of that change on its website and elsewhere not only breached its agreements with passengers, but also constitutes a misrepresentation to passengers of what the Contracts of Carriage actually provide.  By doing so, Air Canada frustrated passengers' ability to hold the airlines to the terms of Air Canada's own agreements, because passengers are misled into believing that they have no right to a refund when in fact they do.

12.     While *not* forming or relied upon as the basis of Plaintiff's claims as the applicable Contracts of Carriage that we do rely upon require a refund and preclude the unilateral refund practice change here, it is worth mentioning that Air Canada's new refund practice – a purported change that the applicable Contacts of Carriage do not permit to be applied to tickets issued prior thereto – is also illegal as it defies the U.S. Department of Transportation ("DOT") which issued an "Enforcement Notice" on April 3, 2020 requiring both domestic and foreign airlines to refund tickets for flights cancelled due to COVID-19.  In fact, the DOT's April 3, 2020 Enforcement Notice notes the "longstanding obligation of carriers to provide refunds for flights that carriers

cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (*e.g.,* a result of government restrictions)."[5]

13.    The DOT's April 3, 2020 Enforcement Notice further indicates that, with regard to cancellations, "[t]he focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger." Therefore, the DOT "continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action." *Id.* (emphasis added).[6]

14.    Air Canada has undoubtedly experienced economic hardships as a result of the COVID-19 pandemic and the resulting decrease in demand for air travel. In fact, Air Canada anticipated not only a pandemic, but such hardships and demand decline therefrom, as it acknowledged in its 2018 Annual Report, some two years before the COVID-19 pandemic started.[7] While Plaintiff and Plaintiff's counsel are not numb to this, they bring this action on behalf of individuals also facing severe hardship who, unlike Air Canada, have not been granted staggering government relief and whose hard-earned money Air Canada is now holding without having provided the flight they booked and contracted for.

15.    Indeed, Air Canada utilized the emergency wage subsidy offered by the Canadian government, before it ceased participation in this program and laid off tens of thousands of its

---

[5] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf.

[6] Again citing the Enhancing Airline Passenger Protections found at 76 Fed. Reg. at 23129, which cited the July 15, 1996 Industry Letter that stated that "applying . . . nonrefundability/penalty provisions in situations in which the change of flight time or travel date has been necessitated by carrier action or 'an act of god', e.g., where the carrier cancels a flight for weather or mechanical reasons . . . is grossly unfair and it violates 49 U.S.C. 41712, as would any contract of carriage or tariff provision mandating such a result."

[7] https://www.aircanada.com/content/dam/aircanada/portal/documents/PDF/en/annual-report/2018_ar.pdf

workers.[8]  In addition to the government aid, Air Canada will also profit from its unlawful practice of issuing vouchers that are tantamount to interest-free loans rather than refunds for cancelled flights.  Moreover, because a significant percentage of customers are unlikely to redeem their vouchers, Air Canada will likely reap close to a 100% profit margin on many of the unredeemed pre-paid tickets since it will then keep the airfare consumers paid for without providing anything to them in return.  Air Canada is essentially using the pre-paid tickets as interest free loans, and in the case of unredeemed vouchers as a forced grant, demanding that its suffering customers provide it with a second bail-out.  As noted by Anna Laitin, director of financial fairness and legislative strategy at Consumer Reports: "[t]he airlines should provide refunds to all customers whose travel plans were impacted by this unprecedented public health and economic crisis. With so many Americans out of work and facing financial hardship, a voucher for future travel is simply not appropriate or useful."[9]

16.    Although Air Canada has the contractual obligation to provide real refunds, it resorted to unilaterally changing and retroactively revising its refund practices in violation of its own Contracts of Carriage to provide a voucher for a future flight.    In fact, because Air Canada cancelled the flights, Air Canada did not perform the essential purpose of its Contracts of Carriage with Plaintiff and the Class, effectively terminating or rescinding those contracts and requiring all monies paid by them for those flights to be returned to them.  At bottom, Air Canada took money from Plaintiff and members of the Class for flights it never provided and refuses to return their money to them.  Nothing permits Air Canada to keep Plaintiff's and Class Members' money for flights not provided in exchange for a voucher.

17.    Plaintiff seeks relief individually, and as a class action, on behalf of all persons in the United States who, before March 19, 2020, purchased tickets for Air Canada, Air Canada

---

[8]https://business.financialpost.com/transportation/airlines/air-canada-to-stop-emergency-wage-subsidy-and-thousands-of-job-cuts-will-leave-workers-out-in-the-cold-says-union.

[9]  https://www.washingtonpost.com/travel/2020/05/14/congress-introduces-new-bill-requiring-cash-refunds-airlines-regardless-who-cancels-trip/.

Rouge or Air Canada Express flights scheduled to operate from March 1, 2020 through the date of a class certification order and who (i) were not provided a full refund after Air Canada cancelled the flights where the flight cancellation was classified by Air Canada as being caused by COVID-19; or (ii) were not provided a full refund after their flights were cancelled and Air Canada failed to offer them "alternative travel arrangements" on a flight that itself was not cancelled.

18.     Plaintiff seeks recovery individually and on behalf of this nationwide class of consumers for Termination or Recission of Contract for Failure to Perform Essential Purpose, in the alternative, Breach of Contract, and in the alternative, Conversion, Money Had and Received, and Quasi-Contract/Unjust Enrichment.  Plaintiff also seeks relief individually and on behalf of a California subclass, as defined herein, for those counts as well as for Air Canada's violation California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

## PARTIES

19.     Plaintiff Barry Winograd is a citizen of the State of California and the United States, who is not Canadian citizen, and who resides in Alameda County.

20.      Defendant Air Canada is Canada's largest domestic and international airline, with its principal place of business in Montreal, Canada.   Air Canada advertises and conducts business throughout the United States, including the State of California.  Air Canada's website indicates that "Air Canada, Air Canada Express, Air Canada Rouge and codeshare partner United Airlines serve five airports in California – San Francisco, Los Angeles, San Diego, San Jose and Sacramento – from five Canadian cities: Vancouver, Calgary, Toronto, Montreal and Edmonton with up to 108 non-stop flights per day."

## JURISDICTION AND VENUE

21.     This Court has jurisdiction under 28 U.S.C. § 1332(d)(2).  Diversity jurisdiction exists as to this putative class action because Plaintiff is a California resident and Air Canada, a foreign corporation, is a citizen of Canada, and the matter in controversy exceeds the sum of $5,000,000.

22.    Venue is proper in this Court as this action was transferred to this District from the United States District Court for the Northern District of California based upon a stipulation wherein all parties consented to transfer and venue in this District pursuant to 28 U.S.C. §1404(a).

## FACTS COMMON TO ALL CAUSES OF ACTION

### I.    Air Canada's Corporate Background

23.    The inception of Air Canada dates back to 1937 when the Canadian government created Trans-Canada Air Lines (TCA) to provide transcontinental airline services within Canada's borders.   Originally, TCA was a wholly owned subsidiary of the government-owned Canadian National Railway Corporation.   In 1965, TCA adopted the name Air Canada, and in 1988 the Canadian government approved its privatization, with the completion of its IPO in October 1988.   By July 1989, Air Canada successfully completed its move to privatization after its second issuance of stock.

24.    Throughout the 1990s, Air Canada went through a series of restructuring and obtained entry into the Japanese market while also opening almost 30 new U.S. routes in 1995.  In 1997, Air Canada joined Lufthansa, Scandinavian Airlines System, Thai Airways International, and United Airlines to form the Star Alliance, which linked the member airline's routes and honored each other's frequent flyer miles.   By the late 1990s, Air Canada had record profits, with international fares accounting for more than half of passenger revenue.   In July 2000, Air Canada acquired Canadian Airlines, and later merged the regional carriers of both into a single entity called Air Canada Jazz.   Shortly thereafter it launched Zip, a low-fare carrier based in Calgary.

25.    Through its membership in the Star Alliance, Air Canada now offers services to 1,300 airports in 195 countries using a fleet of over 300 aircraft.  In 2018, it operated an average of 1,550 scheduled flights each day and carried nearly 51 million passengers to nearly 220 destinations on six continents.   It is the largest airline and the largest provider of "scheduled passenger services in the Canadian market, the Canada-US transborder market and in the international market to and from Canada."

26.    Air Canada has recently experienced a decade of growth.  On February 16, 2020, Air Canada's President and CEO Calin Rovinescu reported it was the top performing stock on the TSX for the past decade, with a 3,575 percent return.  As of December 31, 2019, Air Canada held $5.9 billion in cash, cash equivalents and short-term investments.

## II.    COVID-19 and Air Canada's Flight Cancellations

27.    In January 2020, numerous people were infected with a new coronavirus in Wuhan, China.  The virus spread rapidly throughout China, and in some cases fatally, with the WHO reporting the first cases outside China on January 20, 2020 in Japan, South Korea, and Thailand. The following day, the first confirmed case was reported in the United States in a Washington State resident who had recently returned from a trip to Wuhan.

28.    The WHO soon declared a global health emergency and named the disease caused by the novel coronavirus, COVID-19, as the death toll in China reached 1,113 and confirmed cases worldwide exceeded 45,000.  As the virus spread, countries around the world began to restrict travel to and from their borders.  For example, on January 31, 2020, travel restrictions affecting domestic and international air travel began when the U.S. federal government restricted travel from China.

29.    On February 29, 2020, the U.S. Government issued a "do not travel" warning for areas most impacted by the virus in Italy and South Korea, and banned all travel to Iran.  On March 11, 2020, while the WHO declared COVID-19 to be a pandemic, the U.S. Government blocked travel from Europe to the United States.

30.    A few days later, then President Trump declared a national emergency as states ordered the closings of schools and non-essential businesses across the United States.  The majority of U.S. states soon issued stay-at-home directives, urging residents to refrain from all "nonessential" travel.

31.    As the number of confirmed cases increased, so did the restrictions in travel, resulting in a significant decrease in demand for airline travel.  Initially, Air Canada responded to the decreased demand by cancelling only selective flights.  For example, on March 18, 2020, in

response to the border restrictions imposed by governments, including the U.S. and Canada, Air Canada announced that it would "gradually suspend the majority of its international and U.S. transborder flights by March 31, 2020," and intended "to continue to serve a small number of international and U.S. trans-border destinations from select Canadian cities after April 1, 2020."[10] At the same time, Air Canada announced that, "affected customers…whose flights are cancelled will receive a full credit valid for 24 months." *Id.*

32.     Similarly, on March 20, 2020, Canada and the United States issued a joint statement, indicating that "[a]s a result of the COVID-19 pandemic, the United States and Canada are temporarily restricting all non-essential travel across its borders," and explaining that, "'[n]on-essential' travel includes travel that is considered tourism or recreational in nature."  The statement also indicated that the decision was to be "implemented on March 21, 2020, at which time the US and Canada will temporarily restrict all non-essential travel across the US-Canada land border."[11]

33.     On April 21, 2020, Air Canada announced that it was suspending "scheduled service to the U.S. after April 26 as a result of the agreement between the governments of Canada and the United States to extend border restrictions by an additional 30 days, effective today," and that it planned to resume flying to the U.S. on May 22, pending additional governmental restrictions.[12]  Additionally, Air Canada indicated that it was "waiving change fees for affected customers with bookings during this period to enable them to reschedule their travel with no additional fee."  The announcement also noted that Air Canada had reduced its scheduled flights by over 90 percent since March 16 and that it had maintained limited service to the U.S. "primarily to facilitate the repatriation of Canadians." *Id.*

---

[10] https://aircanada.mediaroom.com/2020-03-18-Air-Canada-Provides-Update-on-Ongoing-COVID-19-Response.

[11]     https://www.dhs.gov/news/2020/03/20/joint-statement-us-canada-joint-initiative-temporary-restriction-travelers-crossing.
[12] https://aircanada.mediaroom.com/2020-04-21-Air-Canada-to-Temporarily-Suspend-Transborder-U-S-Flights.

34.    To date, border closures and restrictions continue and make air travel severely limited to and from the United Sates.  Likewise, Air Canada flights to and from the United States remain severely limited over what they were prior to the advent of the COVID-19 pandemic.

35.    A large number of individuals with flights from the U.S., including Plaintiff, had their flights cancelled by Air Canada following the advent of the COVID-19 pandemic, whether directly due to the COVID-19 pandemic and related travel restrictions or otherwise.

**III.    Air Canada's Change to its Refund Policy and Breach of its Contracts of Carriage**

36.    Prior to the COVID-19 outbreak, Air Canada represented to potential passengers in its online Frequently Asked Questions ("FAQ") that "under the Air Passenger Protection Regulations, if you were denied boarding or your flight was cancelled or delayed by more than three hours due to an event within our control or required for safety purposes, and you refuse the alternate travel arrangements offered because travelling no longer serves a purpose, we'll refund the unused portion of the ticket or, if you aren't at your point of origin, refund your ticket and provide you with a confirmed reservation back to your point of origin that accommodates your needs (**regardless of fare rules**)."  Exhibit 1, *Frequently Asked Questions*, p. 3 of 13, filed herewith (emphasis added).

37.    By buying airline tickets from Air Canada, passengers became subject to Air Canada's "General Terms and Conditions of Carriage" posted online on Air Canada's website and its "International Tariff," (as defined below) both of which make up Air Canada's contracts with passengers (herein throughout, the "Contracts of Carriage").

38.    In these Contracts of Carriage, consistent with its representation in its pre-March 19, 2020 FAQ, Air Canada's International Tariff provides that it will refund customers the unused value of their ticket, upon request, for flights cancelled by Air Canada if the cancellation was "within Air Canada's control or required for safety purposes" and the customer refused alternate travel arrangements offered because traveling no longer served a purpose.  Exhibit 2, *International Tariff General Rules Application to Transportation of Passengers and Baggage*, Issued January 6,

12

2020, Rule 100 Sec. (D)(1)(a), page 104, filed herewith.   This contract provision is referred to hereafter as the "Involuntary Refund Provision."

39.    Cancellations that are either "within Air Canada's control or required for safety purposes" and thus subject to the Involuntary Refund Provision are distinct from "General Refunds," which the International Tariff defines as those "other than the Involuntary Refund" and include cancellations which are outside of Air Canada's control. *See id.* at Rule 100 Sec. (D)(3), page 105.

40.    Through the General Terms and Conditions online, Air Canada's Contracts of Carriage provide that, "[i]n the event of an extended delay or a cancellation," for flights cancelled for reasons "outside of [Air Canada's] control," Air Canada would offer "alternate travel arrangements" and that "[s]hould you refuse the alternate travel arrangements offered because your travel no longer serves a purpose, please note that any refund is subject to the fare rules applicable." Exhibit 3, *Our General Terms and Conditions*, in effect as of December 30, 2019 and Exhibit 4, *Our General Terms and Conditions*, in effect as of March 29, 2020, filed herewith.  This contract provision is referred to hereafter as the "General Refund Provision."

41.    Prior to the COVID-19 pandemic, Air Canada adhered to these contractual provisions.  For example, in the 2017-2018 winter season, Air Canada suspended all flights to St. Maarten and San Juan Puerto Rico in response to Hurricane Maria.  On November 3, 2017, Air Canada issued a reminder on how to process refunds to consumers for flights cancellations.  A copy of the Newsletter is provided below:



**Suspension of flights to St. Maarten**                     **Flash Canada**
                                                            November 3, 2017

# Suspension of flights to St. Maarten

Due to the impact of Hurricane Maria on the island, Air Canada has suspended all flights to St. Maarten for the 2017-18 winter season.

Here is what you need to know:

- You will receive a schedule change notification indicating to/from SXM flight(s) cancelled with no re-protection
- Passengers are permitted changes as listed below:
  - Refund on unused ticket coupon(s)
  - Change of destination (additional collection applies, waive change fee)
  - ONLY as a last resort offer re-protection on OAL with a ticketing agreement per Air Canada's schedule change policy
    - Advise customer although re-protected on the OAL, there is a significant risk that OAL will also cancel service to SXM
- Please ensure the correct ticketing procedures are followed:
  - Add ticket endorsement: **DUE SKCH**
  - Add OSI: **AC SXM ROUTE SUSPENDED**
- To request a refund for tickets issued in your GDS, please process as follows:
  - Add the following in the OSI field: **DUE SKCH**
  - Cancel the space
  - Issue the refund
- To request a refund for tickets issued on www.aircanada.com/agents, please process as follows:
  - Cancel the booking
  - Fill out the online ticket refund form with the following in the comments: **SXM/[FLIGHT NUMBER]/[DATE]**

Please review the Schedule Change policy on the Agent Reference tab of www.aircanada.com/agents.

42.     Similarly, on November 8, 2017, Air Canada issued a reminder on how to process refunds for consumers who purchased airfare for flights to Puerto Rico that were cancelled.  A copy of the Newsletter is provided below:



**flash** 🍁

Update: Suspension of flights to Puerto Rico                    **Flash Canada**
                                                                November 8, 2017

## Update: Suspension of flights to Puerto Rico

Due to the impact of Hurricane Maria on Luis Muñoz Marín International Airport (SJU) in San Juan, Air Canada has suspended all flights to San Juan, Puerto Rico for the 2017-18 winter season.

Here is what you need to know:

- You will receive a schedule change notification indicating to/from SJU flight(s) have been cancelled
- For any of your customers booked for YUL/YYZ-SJU, **you are required to reprotect** on UA via EWR/IAH/ORD; AA via MIA; or OAL with an interline ticket agreement with Air Canada
- Please ensure the correct ticketing procedures are followed:
  - Add ticket endorsement: **INVOL ACSJU**
  - Add OSI: **AC INVOL REROUTE SJU SKED CHG**
  - Add: Passenger home/mobile phone number
  - Tickets shall be identified by the e-ticket record: "I" (for Involuntary)
  - Coupons will show the following in the endorsement box (**no reference to schedule change to be included**): **INVOL ACSJU**
  - Re-protection to be rebooked in the lowest fare class in the same cabin
- To request a refund for tickets issued in your GDS, please process as follows:
  - Add the following in the OSI field: **AC INVOL REROUTE SJU SKED CHG**
  - Cancel the space
  - Issue the refund
- To request a refund for tickets issued on www.aircanada.com/agents, please process as follows:
  - Cancel the booking
  - Fill out the online ticket refund form with the following in the comments: **SJU/[FLIGHT NUMBER]/[DATE]**

Please review the Schedule Change policy on the Agent Reference tab of www.aircanada.com/agents.

43.    In fact, Air Canada represents on its website (to this day) that cancellation of flights due to conditions beyond its control, such as weather-related events, entitle consumers to a full refund. Specifically, Air Canada maintains that "[i]f a flight is cancelled due to a storm, customers

15

have the option to rebook on another flight if space is available or to request a full refund."[13]  An excerpt of the website is provided below:



44.    Air Canada does not limit such refunds to storms.  Indeed, when Air Canada temporarily suspended all direct flights to Beijing and Shanghai on January 29, 2020 as a result of the COVID-19 pandemic, Air Canada offered options to customers including a full refund.  According to the press release, "[a]ffected customers will be notified and offered options, including travel on other carriers where available, *or a full refund*."[14] (emphasis added).  This was consistent with Air Canada's obligations under its Contracts of Carriage for flights it cancelled.

45.    As the scope of the COVID-19 pandemic became more widespread, however, and *after* numerous passengers purchased their tickets, Air Canada retroactively and unilaterally changed its refund practice for flights it cancelled as of March 19, 2020 and now refuses to issue monetary refunds to many passengers whose flights were cancelled by the airline.

46.    Specifically, on March 18, 2020, Air Canada issued an "Update to Schedule Change Policy In Response To COVID 19."[15]  According to the Flash Newsletter, Air Canada urged its

---

[13] https://www.aircanada.com/ca/en/aco/home/about/media/winter-readiness html
[14] https://aircanada.mediaroom.com/2020-01-29-Air-Canada-Suspends-Flights-to-Beijing-Shanghai
[15] A flight schedule change occurs when the airline announces a change to your flight time after you've booked your ticket.

airline ticket brokers to "r**efrain from actioning or refunding tickets affected by this schedule change**."  Furthermore, the newsletter noted that "This new change in schedule change policy will take effect tomorrow March 19, 2020 for all schedule changes implemented as of tomorrow March 19, 2020.  Kindly note, any schedule changes made by Air Canada prior to March 19, 2020 are covered by our standard Schedule Change policy, which includes the option for a full refund for all fare brands."  A copy of the Newsletter is provided below:

 **AIR CANADA**

Email not displaying correctly?
View it in your browser.



**FLASH Canada – March 18, 2020**

## Update to Schedule Change Policy In Response To COVID-19

Air Canada said today that it will gradually suspend the majority of its international and U.S. transborder flights by March 31, 2020 in response to decisions by national governments, including Canada and the United States, to close borders and restrict commercial aviation as a result of the COVID-19 crisis. As a result, you will start to receive these Schedule Change notifications in your GDS queues tomorrow March 19, 2020.

Affected customers whose flights are cancelled will be able to receive a full credit, regardless of fare type, valid for 24 months. We will be providing you additional information shortly on how to process the 24-month validity. At this time, **we ask that you refrain from actioning or refunding tickets affected by this schedule change**.

This new change in schedule change policy will take effect tomorrow March 19, 2020 for all schedule changes implemented as of tomorrow March 19, 2020. Kindly note, any schedule changes made by Air Canada prior to March 19, 2020 are covered by our standard Schedule Change policy, which includes the option for a full refund for all fare brands.

47.     Moreover, at some time on or after March 19, 2020, Air Canada modified the "Refund Option" page of its website to add the statement that **"Cancellations resulting from the COVID-19 crisis are considered outside our control"** and are not refundable:

## Refund Options

 For flight cancellations due to the impacts of COVID-19, government travel advisories and/or health and safety concerns, click here.

In the event of a flight cancellation or a delay of more than three hours, for situations other than those outside our control, Air Canada offers you the option of requesting a refund for the unused portion of your ticket, or using the unused portion toward future travel with us. Cancellations resulting from the COVID-19 crisis are considered outside our control.

*See* Exhibit 7, Refund Options, June 23, 2020, accessed from Air Canada's website, filed herewith (emphasis added).

48.     On March 19, 2020, Air Canada also issued an updated "Schedule Change Policy" for schedule changes processed as of that same day.  According to the Flash Newsletter, an excerpt of which is provided below, "Refunds are not permitted…" as of that same day:



49.     Similarly, on April 22, 2020, Air Canada issued a document titled "Schedule Change Guidelines for Travel Agents" which states "Air Canada has revised the Schedule Change policy, effective immediately, for schedule changes processed as of March 19, 2020."  Exhibit 5, Schedule Change Guidelines, p. 1 of 22, filed herewith.  The Schedule Change Guidelines provide as follows:

Refunds

Schedule change **occurred on/before** March 18, 2020

> A refund is permitted and applies only to a 014 ticket…
>
> Schedule change **occurred on/after** March 19, 2020
>
> ***Full refunds are not permitted.***

*Id.* at 8 of 22 (emphasis added).

50.     Likewise, an Air Canada "Agency Bulletin" issued on May 26, 2020 informs "all travel agents" as follows:

> Any cancellations that were notified in your GDS queues on/before Mar 18 are entitled to a refund. . . .
>
> ***Any cancellations that are notified in your GDS queues on/after March 19 are not allowed any refunds, unless permitted by fare rule***.

Exhibit 6, Agency Bulletin, p. 2 of 4, filed herewith (emphasis added).

51.     Instead of providing refunds, under its new refund practice, Air Canada is providing vouchers for the pre-paid flights, even if the purpose for the trip has ended, even if the individuals have no intention of flying to a destination serviced by Air Canada in the future, and even if the individuals request a refund.

52.     Because cancellations caused by the COVID-19 pandemic are "required for safety purposes," and because Air Canada did not offer alternate travel arrangements where flights were cancelled following the advent of the COVID-19 pandemic whether deemed to be related thereto or not, it owes customers full refunds under either or both the Involuntary Refund and General Refund Provisions of its Contracts of Carriage, even if it would under other circumstances be non-refundable.  This is because the Involuntary Refund and General Refund Provisions of its Contracts of Carriage dictate the circumstances when Air Canada must refund a flight it cancels irrespective of whether the ticket is issued as a non-refundable ticket.

53.     Any effort by Air Canada to *retroactively* change the terms of the Contracts of Carriage that applied to passengers when they purchased their tickets fails because the Contracts of Carriage do not permit such an amendment.

54.     The International Tariff plainly states that while generally changes could be made to the terms of carriage "without notice" up to the "commencement of carriage," Air Canada could *not* make any such changes if "required by applicable laws, government regulations, orders and requirements." Exhibit 2, *International Tariff*, Rule 5 Sec. (D), page 17. This contract provision is referred to hereafter by its title, the "Change Without Notice Provision."

55.     U.S. federal regulations clearly state, "[a]n air carrier may not retroactively apply to persons who have already bought a ticket any material amendment to its contract of carriage that has significant negative implications for consumers." 14 C.F.R. § 253.9. Obviously, any change in contract terms that would render a ticket that was once refundable no longer so would have "significant negative implications for consumers," and therefore, pursuant to the Change Without Notice Provision of its own Contracts of Carriage, Air Canada is not permitted to retroactively change its own refund policy as such a change is not permitted by this "applicable law[][or] governmental regulation[]". Exhibit 2, *International Tariff*, Rule 5 Sec. (D), page 17.

56.     In addition, and separate and apart from the above, pursuant to the express terms of the International Tariff in effect at the time of purchase, for travelers like Plaintiff, who were using Air Canada to travel between the U.S. and Canada, the Contracts of Carriage were fixed "on the date of ticket issuance," *i.e.*, purchase. Exhibit 2, *International Tariff*, Rule 5 Sec. (E)(1), page 17. This contract provision is referred to hereafter as the "Effective Rules Provision."

57.     Air Canada was well aware of the Change Without Notice and Effective Rules Provisions of its own contract prior to its implementation of the new refund practice. In fact, in its pre-March 19, 2020 FAQ, Air Canada informed prospective passengers that "The best time to decide about getting a refund is *when buying your ticket*. Familiarize yourself with our refund policies, and take the time to select a ticket that suits all of your needs at the outset. You should always be aware, *at the time of purchase*, if your ticket is refundable and under what conditions."

22

Exhibit 1, *Frequently Asked Questions*, p. 2 of 13 (emphasis added). Yet, Air Canada now tries to unilaterally and retroactively change the conditions for refunds by applying its new refund practice. Such a change is not permitted by its Contracts of Carriage with Plaintiff and Class Members.

58.     By virtue of applying a new refund practice to passengers like Plaintiff whose tickets were purchased prior to March 19, 2020, the effective date of Air Canada's new refund practice, Air Canada has repudiated and thereby breached the terms of its Contracts of Carriage.

59.     While it is clear that the new refund practice violates the Contracts of Carriage between Air Canada and those consumers who purchased tickets prior to March 19, 2020, the effective date of Air Canada's change to its refund practice, it is believed and therefore averred that it also constitutes a retroactive change for those who purchased tickets *after* that date as well, because, as noted, subsequent versions of the International Tariff, including the version issued June 24, 2020, continued to contain the same Involuntary Refund, Change Without Notice, and Effective Rules Provisions as were contained in the version in effect on January 6, 2020. Likewise, the same General Refund Provision contained in the General Terms and Conditions in effect at the time Plaintiff purchased his ticket is contained in the General Terms and Conditions online as of February 18, 2021. As the International Tariff and General Terms and Conditions constitute the entire contract between passengers and Air Canada for their flights (*i.e.*, the Contracts of Carriage), the new refund practice purporting to deny refunds for cancellations due to COVID-19 or that occurred on or after March 19, 2020 appear only in writings outside of the two documents that comprise the Contracts of Carriage. Such extra-contractual documents on Air Canada's website, in public announcements, and in internal or agency documents are not part of the Contracts of Carriage and cannot alter its terms, especially when the purported change is not permitted by the Contracts of Carriage as is the case here.

IV.     **Air Canada's Misrepresentations of its Contracts of Carriage**

60.     In or about March 2020, Air Canada changed its website to mislead consumers into believing that they are not contractually entitled to refunds when in fact they are.

61.     Prior to the COVID-19 outbreak, Air Canada's website, consistent with its International Tariff, stated "in the event of a flight cancellation or a delay of more than two hours, Air Canada offers you the option of requesting a refund for the unused portion of your ticket or using the unused portion toward future travel . . .," and that such refund "will include your fare and all taxes, as well as certain charges paid for added travel options," as represented in the screenshot below stored in the "Wayback Machine" archives.[16]



62.     Only after the COVID-19 pandemic became manifest, Air Canada changed its "Refund Options" page to state that, "[i]n the event of a flight cancellation or a delay of more than three hours, for situations ***other than those outside our control***, Air Canada offers you the option of requesting a refund for the unused portion of your ticket, or using the unused portion toward

---

[16]https://web.archive.org/web/20190129111349/https://www.aircanada.com/us/en/aco/fly/flight-information/delayed-flights-and-cancellations/refund-options html#/web/20190129111349mp_/https://www.aircanada.com/.

future travel with us. ***Cancellations resulting from the COVID-19 crisis are considered outside our control***."[17]

## Refund Options

 For flight cancellations due to the impacts of COVID-19, government travel advisories and/or health and safety concerns, click here.

In the event of a flight cancellation or a delay of more than three hours, for situations other than those outside our control, Air Canada offers you the option of requesting a refund for the unused portion of your ticket, or using the unused portion toward future travel with us. Cancellations resulting from the COVID-19 crisis are considered outside our control.

*See* Exhibit 7, Refund Options, June 23, 2020, accessed from Air Canada's website, filed herewith (emphasis added).  This language remains on Air Canada's website as of February 18, 2021.[18]

63.    By doing so, Air Canada falsely suggests that refunds are *only* available for cancellations within Air Canada's control, contrary to the plain terms of the Involuntary Refund Provision, which provides for refunds where cancellations are *either* (i) within Air Canada's control *or* (ii) "required for safety purposes," *regardless* of Air Canada's control over the cancellation.  Exhibit 2, *International Tariff*, Rule 100 Sec. (D), page 104.

64.    Compounding the misrepresentation of its express contractual undertaking, Air Canada also falsely suggests that cancellations due to COVID-19 are not "required for safety purposes."

65.    In other words, even though cancellations resulting from the COVID-19 pandemic are plainly "required for safety purposes" and thus subject to the Involuntary Refund Provision of the Contracts of Carriage, Air Canada's retroactive change to its refund practice on its webpage is designed to mislead passengers into believing that such cancellations are outside of the scope of that contractual provision.

---

[17] https://www.aircanada.com/us/en/aco/home/book/travel-news-and-updates/2020/covid-19.html#/cancelled-flight.
[18] https://www.aircanada.com/us/en/aco/home/fly/flight-information/delayed-flights-and-cancellations/refund-options html

66.     In response to mounting consumer criticism, on May 22, 2020, Air Canada publicly announced a new refund practice ("May 22 Announcement"), effective June 1, 2020, which provides "cancellation options" which were "retroactive for customers with original travel between March 1, 2020 and June 30, 2021."[19]  According to Lucie Guillemette, Air Canada's Executive Vice President and Chief Commercial Officer, "starting June 1 [Air Canada] will offer customers the choice of a travel voucher with no expiry date that is fully transferable or to convert their booking into Aeroplan Miles and get an additional 65% bonus miles."  Specifically, the press release noted that, if Air Canada cancelled a flight, customers had "two new options to choose from:" (1) "An Air Canada Travel Voucher for the remaining value of their ticket that has no expiry date, is fully transferable and retains any residual value or;" (2) "[t]he ability to convert the remaining value of their ticket into Aeroplan Miles, with 65 per cent more value versus the normal rate for buying Miles."  Additionally, "[f]or Air Canada customers with non-refundable tickets making voluntary changes on tickets issued up to June 30, 2020, with an original travel date between March 1, 2020 and June 30, 2021 inclusive, they have the option to choose from the two above new options of an Air Canada Travel Voucher or Aeroplan Miles."  *Id.*[20]

67.     But despite its new refund practice, Air Canada has not offered any "alternative travel arrangements" to Plaintiff and Class Members whose flight were cancelled following the advent of the COVID-19 pandemic and, as such, Air Canada cannot refuse to provide a refund, pursuant to the General Refund Provision that is part of its Contracts of Carriage.

68.     To the extent that Air Canada attempted to retroactively change its refund practice to avoid paying refunds to Plaintiff and Class Members, as evidenced by its website representations, described herein, its May 22 Announcement and its prior internal Schedule Change Guidelines and Agency Bulletin, *see* Exhibits 5 and 6, such attempts are void and unenforceable against Plaintiff and Class Members because they are contrary to the Change

---

[19]  https://aircanada.mediaroom.com/2020-05-22-Air-Canada-Announces-New-Schedule-Offering-Customers-Wide-Choice-of-Destinations-for-Safe-Travel-this-Summer-and-Expands-Goodwill-Policy.

[20] The May 22 Announcement also noted that "customers with refundable tickets will continue to have the option of refunds" or either of the two new options, and that "new bookings made up to June 30, 2020 can be changed without fees for original travel between March 1, 2020 and June 30, 2021."  *Id.*

Without Notice and Effective Rules Provisions of the International Tariff that make up their Contracts of Carriage.  *See* Exhibit 2, International Tariff, Rule 5 Sec. (D) and Sec. (E)(1), page 17.

69.     Nevertheless, by virtue of the above acts, Air Canada not only repudiates and breaches the terms of its Contracts of Carriage by refusing to give refunds it is contractually required to give, but it also misrepresents to passengers what those terms actually are, telling them instead that they are not entitled to a refund, thereby deceptively dissuading passengers from requesting a refund. As a result of this misrepresentation, upon information and belief, numerous passengers who are entitled to a refund pursuant to the Contracts of Carriage did not request one.

70.     By repudiating the terms of the Contracts of Carriage, Air Canada committed an anticipatory breach of its contract entitling Plaintiff and members of the Class to a full refund without the need for a formal request for refund.  In any case, any request for a refund from Air Canada in these circumstances would be futile, since Air Canada has changed its refund practice and now refuses to issue refunds for flights cancelled on or after March 19, 2020, even if a refund is requested.

71.     Thus, Air Canada not only repudiated and violated its obligation by refusing to give refunds for flights it cancelled, but also deceptively dissuaded and rendered futile any request for a refund, all in violation of its contractual obligations with Plaintiff and Class Members.

**V.     Air Canada's Actions Violate Federal Regulations and DOT Guidance**

72.     As discussed above, Air Canada's refusal to provide refunds to customers whose flights have been cancelled not only constitutes a repudiation and breach of the Contracts of Carriage, but also a misrepresentation of the terms of those contractual undertakings.

73.     While Plaintiff's claims asserted in this Amended Complaint do not arise from, are not predicated upon and do not rely upon the following violations described in this Section V herein, it bears noting that Air Canada's actions also constitute unfair and deceptive practices pursuant to 49 U.S.C. § 41712, and violate federal regulations, the DOT's April 3, 2020

Enforcement Notice and its Second Enforcement Notice on May 12, 2020 (the "May 12 FAQ"), and other applicable guidance from the DOT.

74.     First, Air Canada's refusal to provide refunds constitutes unfair and deceptive practices because it violates the "longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay," an obligation that "does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)," and therefore "the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged." April 3, 2020 Enforcement Notice, p. 1. Furthermore, the Enhancing Airline Passenger Protections found at 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011) rejected the notion "that carriers are not required to refund a passenger's fare when a flight is cancelled if the carrier can accommodate the passenger with other transportation options after the cancellation," and found it "manifestly unfair for a carrier to fail to provide the transportation contracted for and then to refuse to provide a refund if the passenger finds the offered rerouting unacceptable…and he or she no longer wishes to travel." *See also* May 12 FAQ[21] ("airlines have an obligation to provide a refund to a ticketed passenger when the carrier cancels or significantly changes the passenger's flight, and the passenger chooses not to accept an alternative offered by the carrier"); and April 21, 2020 DOT Guidance on Refunds ("April 21 DOT Guidance")[22] (indicating that "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to travel," that even passengers with non-refundable tickets are entitled to refunds if "the airline makes a promise to provide a refund or the airline cancels a flight or makes a significant schedule change", and that "[a]irlines must also comply with the promises they make…")

75.     Air Canada's refusal to provide refunds constitutes unfair and deceptive practices under 49 U.S.C. § 41712. *See* Enhancing Airline Passenger Protections at 76 Fed. Reg. 23129

---

[21] https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf.
[22] https://www.transportation.gov/individuals/aviation-consumer-protection/refunds.

(noting that, for over 20 years, the DOT's Aviation Enforcement Office has taken the position "that refusing to refund a non-refundable fare when a flight is canceled and the passenger wishes to cancel is a violation of 49 U.S.C. 41712 (unfair or deceptive practices) and would subject a carrier to enforcement action.")  In doing so, DOT cited the Industry Letter of July 15, 1996[23] ("applying . . . nonrefundability/penalty provisions in situations in which the change of flight time or travel date has been necessitated by carrier action or 'an act of god', e.g., where the carrier cancels a flight for weather or mechanical reasons . . . is grossly unfair and it violates 49 U.S.C. 41712, as would any contract of carriage or tariff provision mandating such a result.")  *See also* May 12 FAQ (indicating that the DOT would focus "its enforcement actions on instances where a carrier has disregarded the requirement to offer refunds, failed to honor its refund policies, or where it is determined that the carrier's refund policies or practices are otherwise 'unfair or deceptive' within the meaning of 49 U.S.C. § 41712.")

76.    Air Canada's refusal to provide refunds also constitutes unfair and deceptive practices pursuant to 49 U.S.C. § 41712 because it is a retroactive application of a new definition of the term "cancellation" and/or a significant change which disadvantages passengers.  In fact, Air Canada's May 22 Announcement regarding its new refund policy specifically indicated that it was "introducing new cancellation options *retroactive* to March 1, 2020."[24]

77.    However, the DOT's May 12 FAQ emphasized that its "Aviation Enforcement Office would consider a practice of ***retroactively applying a new definition of cancellation or significant change that disadvantages passengers who purchased tickets under a more generous cancellation or significant change definition to be unfair and deceptive***."  *Id.* (emphasis added). The DOT clarified that it "interprets the statutory prohibition against unfair or deceptive practices to cover actions by airlines and ticket agents applying changes retroactively to their refund policies that affect consumers negatively."  *Id.*  Additionally, it emphasized that "[t]he refund policy in

---

[23]    https://www.transportation.gov/airconsumer/choice-of-forum-contract-provisions-fare-penalties-when-carrier-cancels-flight.
[24]  https://aircanada.mediaroom.com/2020-05-22-Air-Canada-Announces-New-Schedule-Offering-Customers-Wide-Choice-of-Destinations-for-Safe-Travel-this-Summer-and-Expands-Goodwill-Policy  (emphasis added).

place at the time the passenger purchased the ticket is the policy that is applicable to that ticket" and that "[t]he Aviation Enforcement Office would consider the denial of refunds in contravention of the policies that were in effect at the time of the ticket purchase to be an unfair and deceptive practice." *Id.*

78.    By its own admission, as evidenced by its April 22, 2020 Schedule Change Guidelines and May 26, 2020 Agency Bulletin, *see* Exhibits 5 and 6, Air Canada has effectively created a new definition of cancellation to avoid paying the refunds that it previously promised and contracted to provide to its customers.  There is no doubt that taking away customers' option to receive a refund disadvantages those customers who purchased tickets which were subject to a more generous cancellation policy, *i.e.*, those who are were entitled to a refund under the plain terms of the Involuntary Refund Provision and/or General Refund Provision found in the Contracts of Carriage.

**VI.    Passenger Reaction to Air Canada's New Refund Policy**

79.    Countless Air Canada consumers have voiced, and continue to voice, complaints over Air Canada's unfair and deceptive refund practices. For example, Air Canada's Facebook page is rife with wronged customers asking Air Canada to correct its unjust conduct and provide them with their promised refunds, as demonstrated below:[25]

---

[25] https://www.facebook.com/pg/aircanada/posts/.



🔵❤️😮 1.7K                                    270 Comments  168 Shares

👍 Like          💬 Comment          ↪ Share

Most Relevant ▾

**Veronica González Martin** Good afternoon, we have canceled a flight from Madrid and we do not want a voucher but to be refunded. The company only offers us a bonus. We want an answer or talk to the refund department and not be filling out a form. Thank you.

8h

**Kosta Hanna**
Yesterday at 10:12 PM 🌐

Would be great if air Canada does actually comply with regulations and offers a full refund and not just a voucher. It has been confirmed that airlines must honour a refund for any flights that operate within EU countries. Air Canada your not above the law! After this crisis is over I will never fly with your airline again. Will be reporting the matter further to get my refund.

👍 2

👍 Like          💬 Comment          ↪ Share

Most Relevant ▾

**Hayley McBride** Air Canada you cancelled a flight that was due to Canada from the uk on March 26th so I had to pay out of pocket for a one way earlier flight at $700 and you won't refund or compensation according to my claim?I Also please note the original flight was a necessary trip for bereavement and I haven't had the discount for that either as I sent the death certificate and ALL relevant info etc really poorly managed I want someone to message me ASAP

3d

Most Relevant is selected, so some replies may have been filtered out.

 **Elaine Cohen** Good Morning Air Canada. I am still waiting to hear from you regarding my cancelled flight. Funny you said it was cancelled in September because of Covid, but you are now charging 5000.00 more for the same day!! Did our Prime Minister not say there would be no gouging? Please get back to me. I am a senior on a fixed income and I need a refund!

1w                                                                          9

↳  1 Reply

View 27 more comments                                                    2 of 49

↳  1 Reply

 **Addy Prado** Air Canada, you cancelled my flight on April 4th to Vancouver, and I never received any refund, or at the very least, a credit/voucher. Unfortunately, I only received a credit for one portion of my trip to use by the end of the year, which is basically no time. Very upset.

2d                                                                          1

 **Vince Greece** Cool! Now how about you start refunding all the flights YOU canceled. And no I'm not interested in a "credit" that I won't be able to use once your airline goes bankrupt (which I sincerely hope happens after the way your customer service has treated me through this process).

1w                                                                          55

↳  38 Replies

 **David Rowland** My flight was cancelled twice. Of course a refund was refused. I finally rebooked with my "voucher". Then AC had changed the routes, which now makes me have 2 stops, and the fares increased so of course I had to pay a difference in fares even thoug... See More

 **Eona Ilson** My flight in September was changed from Milan to Munich!!!! The email indicated it was because of the "government advisory". The email also said I would get a refund if this was not satisfactory which of course it was not. I cancelled my airbnb because I thought this meant that Air Canada was not flying to Milan in September. Then I went online to cancel the flight. There was no option on line for a refund only a voucher. I spent over an hour and a half on the phone waiting for a representative only to be told that I cannot have a refund! I CANNOT HAVE A REFUND FOR A TRIP TO MILAN THAT WAS CHANGE TO MUNICH!!!! This should be illegal!!!!

2d                                                                          2

**Yukiko Konomi-Girard** What next trip? I haven't even got a response for the message I sent (as per your instruction, Air Canada!) regarding the refund of my canceled flights since March 19!

5h

↳ 1 Reply

**Zack Zakka** I want my money. I didn't purchase a voucher. Give me an thousands of people their money back.

1w    👍😆 13

↳↳ 3 Replies

**Carly Simpson** Anyone actually had any joy with a refund. Offered me taxes back at a quarter of what I paid! They cancelled the flight which isn't even due until mid July and blaming it on the virus! Absolute joke!

4d

**Marshall Ma** I bought through a third party app, they refused refund (even credit) when my flight was cancelled. They said because AC's policy they couldn't give my money back. Instead, they switched my direct flight to a connection flight. Mess

1w    👍 1

**Pablo Hernández** This is getting ridiculous... Are you deleting my posts? Could someone get back to me? You've been ignoring me for a month now.

14h    👍 1

**Stephen Dunsmore** The easiest way is Air Canada's current system whereby you book and pay for flights, Air Canada cancels your flights and steals your money, and you stay home only having had the pleasure of paying!

1w    👍😠😡 17

↳ 2 Replies

**Joaquim Ferreira** We all need a refund!!!  This is a must.

1w



80.     In July of 2020, the DOT released a report noting that Air Canada had the most complaints of any foreign airline, receiving a total of 1,705 complaints in May, 2020 for its refusal to provide refunds.

81.     The above customer complaints, however, are only a small sample of complaints voiced regarding Air Canada's new refund practice, and do not begin to portray the number of customers who have been wronged by Air Canada's conduct.   Rather, there are thousands of individuals in the U.S. who purchased Air Canada airline tickets, had (or will have) their flights cancelled by Air Canada and want a refund.   They cannot, or will not, be using those tickets to fly because Air Canada cancelled, or will cancel, their flights.   In fact, a substantial amount of Air

Canada's revenue comes from its flights from/to the U.S., as the U.S. "accounts for 22 per cent of revenues at Air Canada."[26]

82.     Although Air Canada has suggested the change in its refund practice was necessitated by events outside of Air Canada's control,[27] this does not absolve Air Canada of its contractual obligations to provide refunds, is of little consolation to Plaintiff and members of the Class who are deprived of the use of their money and interest for flights they paid for that were never provided by Air Canada, and utterly fails to account for the loss of the use of their money. This is particularly weighty given the current state of the economy and unprecedented financial hardships many Americans are facing during the COVID-19 pandemic. Air Canada has no moral, ethical or legal basis to keep Plaintiff's and Class Members' money for flights Air Canada cancelled and never provided, especially when the applicable Contracts of Carriage expressly require a refund under such circumstances even for otherwise "non-refundable" tickets.

83.     Air Canada cannot even credibly claim that the possibility of a pandemic was unforeseen. Rather, pandemic outbreaks are a well-known risk to Air Canada and the airline industry that they recognize in their business, operational and financial plans. Indeed, Air Canada specifically acknowledges in its 2018 Annual Report that:[28]

> Outbreaks or the threat of outbreaks of viruses or other contagions or epidemic diseases, including influenza, SARS, Ebola, Zika, as well as any travel or other advisories relating to same, whether domestic or international or whether relating to Canadian cities or regions or other cities, regions or countries, could have a material adverse effect on demand for air travel and could result in a major negative impact on traffic on Air Canada's network. Any resulting reduction in traffic in the markets served by Air Canada could have a material adverse effect on Air Canada, its business, results from operations and financial condition.

---

[26]   https://financialpost.com/news/economy/some-canadian-companies-start-new-year-with-gains-from-u-s-tax-cuts-analysts.

[27]   https://paxex.aero/2020/06/air-canada-refund-complaint-dot-dispute/.

[28]   https://www.aircanada.com/content/dam/aircanada/portal/documents/PDF/en/annual-report/2018_ar.pdf

84.     As noted by Xavier Barsalou-Duval, a member of Parliament of the House of Commons, the money of "Canadian airline customers has been 'confiscated' by companies that refuse to reimburse at a time when millions of workers are unemployed due to the COVID pandemic- 19."[29]  Yet, according to Mr. Barsalou-Duval, Air Canada was sitting on $6 billion in cash."[30]  Further, Mr. Barsalou-Duval has indicated that, "[o]f this six billion, 2.6 billion belong to its customers who have often lost their jobs and who are far from having a year's worth of cash in hand."[31]

85.     In stark contrast, Air Canada's President and CEO Calin Rovinescu has indicated that Air Canada possesses sufficient financial resources to enable the company "to fully focus our immediate attention on both the safety and well-being of our customers and our employees and on mitigating the financial impact of the virus."[32]  In a March 16, 2020 press release, Air Canada states that, "Air Canada had cash, cash equivalents, short and long investments of $7.1 billion at March 13, 2020," as well as an unencumbered asset pool of around $5 billion.  *Id.*  Moreover, according to Air Canada's treasurer Pierre Houle, Air Canada "entered 2020 on the doorstep of investment grade with a very strong balance sheet, low net leverage and significant liquidity, before the COVID-19 pandemic and government-imposed quarantines and border restrictions destroyed demand and depleted cash. Air Canada's strong relative position has allowed us to navigate through this crisis and we have full confidence that we will be successful in maintaining liquidity at levels more than sufficient to meet the challenges and take advantage of the opportunities ahead."  He also indicated that, following recent transactions, "Air Canada has now raised approximately $5.5 billion in 2020 and expects to end the second quarter of 2020 with at least $9 billion in liquidity."[33]

---

[29]       https://nationalpost.com/news/politics/growing-number-of-canadians-furious-that-airlines-wont-reimburse-cancelled-travel-due-to-covid-19.
[30] https://westernaviationnews.com/2020/05/19/transport-minister-backs-airline-voucher-policies-covid-pandemic/.
[31] https://westernaviationnews.com/2020/05/19/transport-minister-backs-airline-voucher-policies-covid-pandemic/.

[32] https://aircanada.mediaroom.com/2020-03-16-Air-Canada-Provides-Update-on-Response-to-COVID-19.
[33]       https://aircanada mediaroom.com/2020-06-22-Air-Canada-Completes-Financing-Transactions-Raising-Additional-1-23-Billion.

**PLAINTIFF'S EXPERIENCE WITH AIR CANADA**

86.     On February 14, 2020, Plaintiff purchased "Economy Flex" tickets from Air Canada for himself and his wife to travel from Philadelphia International Airport to Toronto Pearson Airport on March 31, 2020, and to travel from Toronto Pearson Airport to Boston Logan International Airport on April 2, 2020 (he was scheduled to fly on a separate carrier, Delta Air Lines, from Boston to Philadelphia).  See Exhibit 8, Plaintiff's Booking Confirmation, filed herewith.  Plaintiff was travelling to Toronto (and later to Boston) to attend meetings for an organization of which he is an officer.  Plaintiff paid a total of $1,181.74 for the tickets, including taxes and fees.  Plaintiff purchased these tickets while he was at his home in Alameda County, California.

87.     On March 29, 2020, following the enactment of the border restrictions between the U.S. and Canada, Air Canada cancelled Plaintiff's flights via email notification.  In doing so, Air Canada emailed Plaintiff a notice stating that it was an "involuntary cancellation," and that "[f]or flights cancelled due to COVID-19, Air Canada retains the balance of your ticket for future travel within 24 months of your flight cancellation date."  See Exhibit 9, Plaintiff's Email Notice of Flight Cancellation, filed herewith.

88.     Plaintiff has had subsequent communications with Air Canada in which he has sought a full refund for the ticket.  See Exhibit 10, Plaintiff's Email Refund Request, filed herewith.

89.     Air Canada has refused to provide Plaintiff such a refund.

90.     Plaintiff did receive a full refund from Delta Air Lines for a Boston-Philadelphia flight that was cancelled.

91.     As discussed above, Air Canada's International Tariff in effect when Plaintiff purchased his tickets, as confirmed by Plaintiff's booking confirmations (see Exhibit 8), states in the Involuntary Refund Provision that Air Canada "will refund the unused portion of the ticket" when "the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses alternate travel arrangements" if "due to reasons within Air Canada's

control or required for safety purposes." *See* Exhibit 2, International Tariff, Rule 100 Sec. (D), page 104.

92.    By failing to issue Plaintiff a refund when Air Canada has acknowledged that his flight cancellation was "Involuntary" and "due to COVID-19," see Exhibit 9, and because a cancellation that is due to COVID-19 is plainly "required for safety purposes," Air Canada breached the Involuntary Refund Provision of its Contracts of Carriage.

93.    In addition, through the General Terms and Conditions online which are part of Plaintiff's Contracts of Carriage, Air Canada agreed in the General Refund Provision that for flights cancelled by Air Canada for reasons outside of its control and not "required for safety purposes," Air Canada would offer "alternate travel arrangements" and that if a customer refused such arrangements because traveling no longer served a purpose, then refunds would be "subject to the fare rules applicable."  See Exhibits 3 and 4, Our General Terms and Conditions.

94.    Thus, even if Plaintiff's flight cancellation is not deemed to be "required for safety purposes," Air Canada was required to offer him "alternative travel arrangements" before any "fare rules" would be applied to his refund request, per the General Refund Provision.  By failing to offer him any alternative travel arrangements, Air Canada cannot now rely upon "fare rules" to deny Plaintiff's refund request, and breaches its Contracts of Carriage with him by doing so.

95.    Air Canada's own "Agency Bulletin" issued on May 26, 2020 strongly suggests that but for its decision to change its refund practice during the COVID-19 pandemic, Plaintiff would in fact have received a refund, "fare rules" notwithstanding.  The Agency Bulletin informs "all travel agents" that while "Any cancellations that are notified in your GDS queues on/after March 19 are not allowed any refunds, unless permitted by fare rule," there is no such restriction on pre-March 19, 2020 cancellations and that "Any cancellations that were notified in your GDS queues on/before Mar 18 are entitled to a refund."  See Exhibit 6, Agency Bulletin, p. 2 of 4.

96.    Based on these provisions and statements, Air Canada contractually promised and represented that the tickets Plaintiff purchased would be refunded if a flight cancellation was "required for safety purposes" or if his flight was cancelled for any other reason and no alternative

travel arrangements were offered. Plaintiff relied on these promises and representations in deciding to purchase the airline tickets, and these promises and representations were part of the basis of the bargain. Had Plaintiff known that Air Canada would not honor its promise to refund his tickets if the flights were cancelled, this would have impacted his purchasing decision.

97.     Here, Plaintiff's flight was cancelled by Air Canada as a result of the COVID-19 pandemic. Plaintiff seeks a full refund as required by his Contracts of Carriage with Air Canada. While not a necessary condition for a refund under the Contracts of Carriage, Plaintiff notes that he has no intention on travelling to Canada, nor will he use Air Canada in the foreseeable future, meaning that the travel vouchers Air Canada offered have no value to him.

98.     Additionally, only after Plaintiff booked his flights and after the COVID-19 pandemic became manifest, Air Canada updated its website to advise (albeit in violation of their contractual obligations to him) under the "Refund Options" page that "In the event of a flight cancellation or a delay of more than three hours, for situations other than those outside our control, Air Canada offers you the option of requesting a refund for the unused portion of your ticket, or using the unused portion toward future travel with us. Cancellations resulting from the COVID-19 crisis are considered outside our control." See Exhibit 7, Refund Options.

99.     By suggesting on its website that refunds are only available "for situations other than those outside our control" and that "Cancellations resulting from the COVID-19 crisis are considered outside our control," see *id*., Air Canada deliberately misrepresented the terms of its Contracts of Carriage with Plaintiff, which expressly provides under the Involuntary Refund Provision that refunds will be provided when a cancellation is within Air Canada's control or "required for safety purposes."

100.     This misrepresentation was designed to mislead Plaintiff into believing that he was not contractually entitled to refund when in fact he was.

## CLASS ACTION ALLEGATIONS

101.    Plaintiff seeks certification of a nationwide class, and a California subclass, as defined below under Fed.R.Civ.P. 23 (b)(1), (b)(2), (b)(3) and/or (c)(4), as may deemed appropriate by the Court.

102.    Plaintiff brings this action on behalf of himself and on behalf of all other persons in the United States who purchased tickets for Air Canada, Air Canada Rouge or Air Canada Express flights scheduled to operate to or from the United States between March 1, 2020 through the date of a class certification order and who (i) were not provided a full refund after Air Canada cancelled the flights where the flight cancellation was classified by Air Canada as being caused by COVID-19; or (ii) were not provided a full refund after their flights were cancelled by Air Canada and Air Canada failed to offer them "alternative travel arrangements" (as specified by the Contracts of Carriage) on a flight that itself was not cancelled by Air Canada (the "Class").

103.    Plaintiff also seeks to represent a subclass of all members of the Class who purchased the relevant tickets in California ("California Subclass" or "Subclass").

104.    Excluded from the Classes are: (i) Air Canada and its employees, principals, affiliated entities, legal representatives, successors and assigns; (ii) the judges to whom this action is assigned and any members of their immediate families; and (iii) persons whose ticket(s) were issued where there is no United States address for them associated with the ticket.

105.    Plaintiff reserves the right to re-define the Class and/or Subclass prior to class certification, or to seek certification of one or more multi-state classes, following discovery in this matter.

106.    The proposed Class and Subclass are so numerous that it is impractical to bring them all before the Court.  Upon information and belief, there are thousands of members of the Class and Subclass.  Therefore, individual joinder of all members of the Class or Subclass would be impracticable.  The precise number of Class Members is unknown to Plaintiff, but may be easily discovered from Air Canada's records.  The Class and Subclass are ascertainable because their definitions are objective and specific.  Class and Subclass Members may be identified through

Defendant's records, claim forms or receipts. Additionally, Class and Subclass Members may be identified through records of airline ticket sales.

107.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

108.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

109.    Common questions of law or fact exist as to all members of the Class and Subclass. These questions predominate over the questions affecting only individual Class and Subclass Members. These common legal or factual questions include:

      a.    Whether Air Canada engaged in the false, misleading, and unlawful conduct alleged;

      b.    Whether Air Canada's failure to provide the flights to Plaintiff and Class (and Subclass) Members which were booked but were cancelled is grounds for termination or recission of their Contracts of Carriage with Air Canada entitling Plaintiff and Class (and Subclass) Members to the return of the purchase price they paid;

      c.    Whether Air Canada contractually or otherwise promised to refund customers for flights that were cancelled;

      d.    Whether Air Canada has a practice of denying refunds to Class (and Subclass) Members for cancelled flights;

      e.    Whether Air Canada's practice of denying refunds to customers on flights that were cancelled breaches its Contracts of Carriage with Plaintiff and Class (and Subclass) Members, and is otherwise unfair, deceptive, and/or misleading; and

      f.    The appropriate measure of damages, restitutionary disgorgement, and/or restitution.

110.    Plaintiff's claims are typical of the claims of the Class, in that he is a consumer who purchased Air Canada airline tickets in the United States that Air Canada promised and represented

to be refundable if cancelled by Air Canada for a required safety purpose or for another reason and Air Canada provided no alternative travel arrangements, and Air Canada refused to provide a refund or alternative travel arrangements after his flights were cancelled by Air Canada.  His claims are also typical of the claims of the California Subclass in that he is a consumer who purchased Air Canada airline tickets in the State of California that Air Canada promised and represented to be refundable if cancelled by Air Canada for a required safety purpose or for another reason and Air Canada provided no alternative travel arrangements, and Air Canada refused to provide a refund or alternative travel arrangements after his flights were cancelled by Air Canada.  Plaintiff, therefore, is no different in any relevant respect from any other Class (or Subclass) Member, and the relief sought is common to the Class and the California Subclass.

111.    Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the members of the Class and Subclass he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation.  Plaintiff and his counsel will adequately protect the interests of the Class and Subclass.

112.    A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual member of the Class and Subclass are small given the burden and expense of individual prosecution of the complex litigation necessitated by Air Canada's conduct.  Thus, it would be virtually impossible for members of the Class and Subclass to effectively redress the wrongs done to them through individual actions.  Moreover, even if members of the Class and Subclass could afford individual actions, it would still not be preferable to class-wide litigation.  Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the class.  By contrast, a class action

presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

113.    Further, in the alternative, the action may be maintained as class actions with respect to particular issues.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>

**Contract (on Behalf of Plaintiff the Class, and the Subclass against Air Canada)**

114.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

115.    Plaintiff brings this Count I individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.

116.    Air Canada entered into Contracts of Carriage with Plaintiff and Class Members where the essential basis of the bargain was to provide the service of airline flights they booked in exchange for money they paid to Air Canada.  Plaintiff and Class Members paid for the flights they booked from Air Canada.  Due to no fault of Plaintiff and Class Members, Air Canada failed to provide the flights Plaintiff and Class Members booked and paid for when it cancelled them as described herein.  Thus, the essential purpose of the Contracts of Carriage was never performed by Air Canada.  The return of the purchase price to Plaintiff and Class Members is a remedy where, as here, the Contracts of Carriage have been effectively terminated or rescinded by Air Canada's failure to provide the flight they booked.  Plaintiff and the Class have an election of remedies when the other party to a contract fails to perform the essential basis of the bargain as occurred here and therefore seek termination or recission of their contracts for flights they booked with Air Canada that it cancelled, and that Air Canada return the amounts Plaintiff and Class Members paid for those cancelled flights.

117.    In the event termination or recission of the Contracts of Carriage is not available, Plaintiff and Class Members alternatively seek damages from Air Canada for its breach of contract.

Air Canada entered into Contracts of Carriage with Plaintiff and Class Members to provide the service of airline flights they booked in exchange for money they paid to Air Canada, and to provide a refund in the event that it should cancel such flights as specified herein.

118. Air Canada repudiated and breached these contracts when it did not provide Plaintiff and Class Members with the bargained for flights or the bargained for refunds.

119. In the International Tariff and General Terms and Conditions that make up the Contracts of Carriage, Air Canada promised and represented that it would refund customers for flights which were cancelled as specified herein, and Plaintiff and Class Members relied on these representations and contractual promises in deciding to purchase the airline tickets, and these representations and contractual promises were part of the basis of the bargain.

120. In refusing to provide refunds as required by the Contracts of Carriage, and then changing its refund practice as specified herein, Air Canada repudiated and breached its contractual promises and representations to its customers. Plaintiff and Class Members have not received the benefit of their bargain because Air Canada failed to perform its contracted obligation to provide the flight they booked and then refused to refund the purchase price.

121. Plaintiff's and the Class Members' airline tickets are subject to Air Canada's International Tariff which state that Air Canada, "will refund the unused portion of the ticket" when "the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses alternate travel arrangements . . .due to reasons within Air Canada's control or required for safety purposes." Exhibit 2, *International Tariff*, Rule 100 Sec. (D), page 104. This Involuntary Refund Provision has been the same for Air Canada international flights booked since at least December 2020. While not a basis of this or any other claim asserted in this Amended Complaint, it is noteworthy that this contractual provision is consistent with federal regulations and guidance which require refunds if an airline cancels a flight.

122. Air Canada cancelled Plaintiff's and the Class' flights "due to reasons within Air Canada's control or required for safety purposes." Specifically, Air Canada either: a) chose to

cancel Plaintiff's and the Class' flights or b) was required to cancel their flights due to government imposed COVID-19 restrictions, i.e., a "safety purpose."

123.    Air Canada repudiated and breached this contractual term when it did not provide Plaintiff and Class Members with the bargained for flights cancelling them due to COVID-19, and when it failed to provide the bargained for refunds as specified herein.

124.    In addition, Plaintiff's and the Class Members' airline tickets are subject to Air Canada's General Terms and Conditions which provide that for flights cancelled by Air Canada for reasons outside of its control and not "required for safety purposes," Air Canada would offer "alternate travel arrangements" and that if a customer refused such arrangements because traveling no longer served a purpose, then refunds would be "subject to the fare rules applicable."  This General Refund Provision has been the same for all Air Canada international flights booked since at least December 30, 2019.  See Exhibits 3 and 4, General Terms and Conditions, p. 3 of 8.

125.    When Air Canada cancelled Plaintiff's and the Class' flights, it did not offer them alternate travel arrangements.  As such, it repudiated and breached its agreements with Plaintiff and Class Members to the extent it relied upon "fare rules" to deny refunds to Plaintiff and the Class.

126.    Air Canada's breach has caused Plaintiff and Class Members to suffer injury by having paid money and not having received the benefit of the bargained for flights or a refund.

127.    Instead of providing refunds to Plaintiff and Class Members as it was contractually required to do, Air Canada impermissibly attempted to retroactively and unilaterally change Plaintiff's and Class Members' contracts to eliminate their right to such a refund. Air Canada's effort to retroactively and unilaterally change the refund terms of the Contracts of Carriage that applied to Plaintiff and Class Members when they purchased their tickets must fail because the Contracts of Carriage do not permit such an amendment, by virtue of both the Change Without Notice Provision and the Effective Rules Provision, as specified herein.  See Exhibit 2, International Tariff, Rule 5, Sec. (D) and (E)(1), p. 17.

## COUNT II
**Violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750,**
***et seq.* (on Behalf of Plaintiff and the Subclass against Air Canada)**

128.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

129.    Plaintiff brings this Count II individually and on behalf of the members of the Subclass.

130.    This cause of action is brought pursuant to the CLRA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Civil Code § 1770 (a).

131.    Air Canada has violated the CLRA by, as described *supra*, misrepresenting that it did not have a contractual obligation to refund customers for flights it cancelled, when in fact it does.  By applying a new refund practice retroactively to passengers who had already purchased tickets, and by advertising on its website and elsewhere that refund options were not available unless a cancellation was within Air Canada's control and specifying cancellations due to COVID-19 as not within Air Canada's control falsely implying such cancellations by Air Canada were non-refundable, Air Canada misrepresents the terms of its Contracts of Carriage.  Such actions constitute unfair and deceptive practices.

132.    The foregoing unfair and deceptive acts and practices are misleading in a material way because they fundamentally misrepresent Air Canada's Contracts of Carriage, as well as consumers' rights to receive a refund for their flights cancelled by Air Canada.

133.    Plaintiff and each member of the proposed Subclass are "consumers" within the meaning of Civil Code § 1761(d).

134.    The purchases of airline tickets from Air Canada by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and these airline tickets constitute "services" within the meaning of Civil Code § 1761(b).

135.    Air Canada has violated, and continues to violate, the CLRA by engaging in unfair and deceptive acts and practices in at least the following respects, by indicating (and contracting) that the airline tickets were refundable upon cancellation by Air Canada as specified herein, and later, after impermissibly changing its refund practice retroactively and representing online and elsewhere that refunds were only available when flight cancellations were within Air Canada's control and representing online that cancellations due to COVID-19 as not within Air Canada's control falsely implying such cancellations by Air Canada were non-refundable, and refusing to refund the cost of Plaintiff's and the Subclass' tickets after their flights were cancelled:

a.    In violation of Civil Code § 1770(a)(5), Air Canada represented on its website and elsewhere that the services it agreed to provide had characteristics, uses, or benefits (*i.e.*, that the airline tickets were not refundable if the cancellation by Air Canada was not within its control and cancellations by Air Canada due to COVID-19 were non-refundable) which they did not have;

b.    In violation of Civil Code § 1770(a)(7), Air Canada represented on its website and elsewhere that the service was a particular standard, quality or grade (*i.e.*, nonrefundable if cancelled by Air Canada for reasons not within its control or due to COVID-19), if they are of another (*i.e.*, refundable if cancelled by Air Canada for reasons within its control or due to COVID-19).

c.    In violation of Civil Code § 1770(a)(9), Air Canada advertised services in its Contracts of Carriage (*i.e.,* that the tickets were refundable if cancelled by Air Canada for a required safety purpose or if no alternate travel arrangements were provided) with the intent not to provide what it advertised;

d.    In violation of Civil Code § 1770(a)(14), Air Canada represented that its transaction conferred or involved rights, remedies, and obligations that it did not have or involve (*i.e.*, that the airline tickets were not refundable if the cancellation by Air Canada was not within its control and cancellations by Air Canada due to COVID-19 were non-refundable); and

e.    In violation of Civil Code § 1770(a)(16), Air Canada represented that the subject of a transaction (*i.e.,* the airline tickets) had been supplied in accordance with a previous representation (*i.e.,* the Contracts of Carriage) when it had not.  That is, by representing in its Refund Options page online (Exhibit 7) and elsewhere that refunds were *only* available

when flight cancellations were within Air Canada's control, and that cancellations due to COVID-19 were outside of Air Canada's control, Air Canada represented that that the tickets it sold to Subclass Members were nonrefundable pursuant to the terms of the Contracts of Carriage, even though the Contracts of Carriage actually say otherwise.

136.    Air Canada knew or should have known that its representations regarding the tickets and subsequent refusal to issue refunds violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Subclass.

137.    Air Canada's actions set forth in this Complaint were done willfully, wantonly and with reckless disregard for the interests of Plaintiff and the Subclass, and as a result, Plaintiff and the Subclass have suffered an ascertainable loss of money or property.

138.    Plaintiff and the members of the Subclass request that this Court enjoin Air Canada from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code § 1780(a)(2).

139.    On August 12, 2020, Plaintiff also sent Air Canada a pre-suit notice and demand to describe Air Canada's violations of the CLRA and to request refunds for himself and on behalf of all persons in the United States, including those in California ("CLRA Letter") and Air Canada did not provide the relief requested within 30 days.  Thus, Plaintiff seeks damages, restitution and restitutionary disgorgement, statutory damages as well as injunctive relief and punitive damages under Civil Code § 1780.

## COUNT III
### Conversion (on Behalf of Plaintiff, the Class, and the Subclass against Air Canada)

140.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

141.    Plaintiff brings this Count III individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.  Count III is brought in the alternative to the contract claim in Count I.

142.   Plaintiff and members of the Class have an ownership interest and right to the monies paid for the tickets for cancelled flights sold by Air Canada, as well as a right to the consequential damages resulting therefrom.

143.   Air Canada has intentionally and wrongly asserted dominion over the payments illegally diverted to them for the cancelled flights, and consequential damages resulting therefrom. Air Canada has done so every time that Plaintiff and members of the Class paid to purchase a ticket for a flight that was later cancelled by Air Canada as described herein.

144.   As a direct and proximate cause of Air Canada's conversion, Plaintiff and members of the Class suffered damages in the amount of the payments made for each time they purchased a ticket for a flight that was cancelled and in the amount of consequential damages resulting therefrom.

## COUNT IV
### Money Had And Received (on Behalf of Plaintiff, the Class, and the Subclass against Air Canada)

145.   Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

146.   Plaintiff brings this Count IV individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.  Count IV is brought in the alternative to the contract claim in Count I.

147.   Air Canada received money in the form of airline ticket fees that were intended to be used for the benefit of Plaintiff and the Class.

148.   Those airline ticket fees were not used for the benefit of Plaintiff and the Class, and Air Canada has not given back or refunded the wrongfully obtained money and airline tickets fees to Plaintiff and the Class.

149.   Air Canada obtained money in the form of airline ticket fees that was intended to be used to provide flights for Plaintiff and the Class.  Air Canada, however, has retained all of the

airline ticket fees while the flights that Plaintiff and members of the Class were supposed to be passengers on were cancelled by Air Canada.

### COUNT V
**Restitution Based on Quasi-Contract/Unjust Enrichment**
**(on Behalf of Plaintiff, the Class, and the Subclass against Air Canada)**

150.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

151.    Plaintiff brings this Count V individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.  Count V is brought in the alternative to the contract claim in Count I.

152.    By falsely and misleadingly representing that its airline tickets were no longer refundable if flights were cancelled by Air Canada as described herein, Air Canada obtained money from Plaintiff and Class Members.

153.     Air Canada has been unjustly enriched at the expense of Plaintiff and the Class as a result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Air Canada to restore these ill-gotten gains to Plaintiff and the Class.

154.    As a direct and proximate result of Air Canada's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

### JURY DEMAND

Plaintiff demands a jury trial on all Causes of Action and/or issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, request for all Causes of Action for which they are available an award, relief and entry of a judgment, as follows:

A.      An order certifying that this action is properly brought and may be maintained as a class action under Fed. R. Civ. P. 23; that Plaintiff be appointed representative of the Class and Subclass; and that Plaintiff's undersigned counsel be appointed Co-Lead Counsel for the Class and Subclass.

B.      An order terminating or rescinding the contracts between Plaintiff and the Class and Subclass and Air Canada for booked flights not provided due to their cancellation by Air Canada and directing Air Canada to return all amounts Plaintiff and Class Members paid for those cancelled flights.

C.      Restitution in such amount that Plaintiff and members of the Class and Subclass paid to purchase airline tickets for cancelled flights.

D.      An award to Plaintiff and all Class Members of compensatory, consequential, incidental, statutory and punitive damages, restitution, and disgorgement, in an amount to be determined at trial.

E.      An order requiring Air Canada to pay all costs associated with Class and Subclass notice and administration of Class and Subclass-wide relief.

F.      For attorneys' fees and expenses pursuant to all applicable laws.

G.      For pre and post judgment interest.

H.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies Air Canada received as a result of the misleading, fraudulent and unlawful conduct alleged herein.

I.      For such other and further relief as the Court may deem just and proper.


DATED:  March 15, 2021


**FEINSTEIN DOYLE PAYNE**          **VOZZOLO LLC**
**  & KRAVEC, LLC**

By:  *s/Joseph N. Kravec, Jr.*          By:  *s/Antonio Vozzolo*
      Joseph N. Kravec, Jr.                    Antonio Vozzolo

Wyatt A. Lison (to be admitted *pro hac vice*)
Ruairi McDonnell (to be admitted *pro hac vice*)


29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014

and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

Emails: jkravec@fdpklaw.com
      wlison@fdpklaw.com
      rmcdonnell@fdpklaw.com

345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Counsel for Plaintiff and the Proposed Class*